UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
FRANK MCGILL,

                Plaintiff,

                **MEMORANDUM & ORDER**
   - against -               18-CV-6430 (PKC)

ANDREW SAUL,[1]

                Defendant.
----------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

Plaintiff Frank McGill commenced this action under 42 U.S.C. § 405(g), seeking judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for Disability Insurance Benefits ("DIB"). Before the Court are the parties' cross-motions for judgment on the pleadings. (Dkts. 10, 13.) For the reasons set forth below, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. This case is remanded for further proceedings consistent with this Memorandum & Order.

## BACKGROUND

**I.  Procedural History**

On April 16, 2015, Plaintiff filed an application with the SSA for DIB, in which he alleged he had been disabled as of January 30, 2015. (Administrative Transcript ("Tr."), Dkt. 7, at 72, 74.)

---

[1] Andrew Saul was sworn in as the Commissioner of Social Security on June 17, 2019. Pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul is automatically substituted as Defendant in this action. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party."); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."). The Clerk of Court is respectfully directed to update the docket accordingly.

1

His application was denied. (*Id.* at 82–86.) After requesting a hearing (*id.* at 94), Plaintiff appeared before Administrative Law Judge ("ALJ") Andrea Addison on May 8, 2017 (*id.* at 30−71). In a decision dated October 10, 2017, the ALJ determined that Plaintiff was not disabled and was therefore not entitled to DIB. (*Id.* at 12−23.) The ALJ's decision became final on September 18, 2018, when the SSA's Appeals Council declined Plaintiff's request to review that decision. (*Id.* at 1–5.) Thereafter, Plaintiff timely[2] filed the instant action. (*See generally* Complaint, Dkt. 1.)

## II.   The ALJ Decision

In evaluating disability claims, the ALJ must adhere to a five-step inquiry. The claimant bears the burden of proof in the first four steps of the inquiry; the Commissioner bears the burden in the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). First, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the answer is yes, the claimant is not disabled. If the answer is no, the ALJ proceeds to the second step to determine whether the claimant suffers from a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe when it "significantly limits [the

---

[2] Section 405(g) provides that

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g). "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the claimant makes a reasonable showing to the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)). Applying this standard, the Court determines that Plaintiff received the Commissioner's final decision on September 23, 2018. Plaintiff filed the instant action on November 12, 2018—50 days later. (*See generally* Complaint, Dkt. 1.)

claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the impairment is not severe, then the claimant is not disabled. In this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 30, 2015, and that Plaintiff suffered from one severe impairment, "degenerative disc disease with herniated discs." (Tr. at 17.)

Having determined that Plaintiff satisfied his burden at the first two steps, the ALJ proceeded to the third step, at which the ALJ considers whether any of the claimant's impairments meet or equal one of the impairments listed in the Social Security Act's regulations (the "Listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *see also* 20 C.F.R. pt. 404, subpt. P, app. 1. In this case, the ALJ concluded that Plaintiff's impairment did not meet or medically equal the severity of any of the impairments in the Listings. (Tr. at 17.) Moving to the fourth step, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[3] to perform "sedentary work" as defined in 20 C.F.R. § 404.1567(a).[4] (*Id.* at 18.) Qualifying her RFC determination, the ALJ noted that Plaintiff "should avoid concentrated exposure to extreme cold temperatures and humidity [and] should also be permitted to change positions every 30 minutes without going off task." (*Id.*)

---

[3] To determine the claimant's RFC, the ALJ must consider the claimant's "impairment(s), and any related symptoms . . . [which] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

[4] According to the applicable regulations,

> [s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

Relying on her RFC finding from step four, the ALJ determined that Plaintiff was unable to perform any of his past relevant work as a garbage collector, collector driver, or mail carrier. (*Id.* at 21.) The ALJ then proceeded to step five. At step five, the ALJ must determine whether the claimant—given his RFC, age, education, and work experience—has the capacity to perform other substantial gainful work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In this case, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff was capable of performing, namely: (1) order clerk, which has an availability of 20,000 jobs; (2) charge account clerk, which has an availability of 16,900 jobs; and (3) document preparer, which has an availability of 103,400 jobs. (Tr. at 22.) As such, the ALJ found that Plaintiff was not disabled under the Social Security Act. (*Id.*)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Social Security Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151 (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks, citation, and brackets omitted). In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (internal quotation marks and citation omitted). However, the Court "defer[s] to the

4

Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g).

## DISCUSSION

Plaintiff argues that the ALJ erred by (1) improperly weighing the opinions of the treating physicians and the consultative examiner; and (2) improperly assessing Plaintiff's credibility. (Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings ("Pl.'s Br."), Dkt. 14, at 10–20.) The Court addresses each argument in turn.

### I. Treating Physician Rule

"With respect to the nature and severity of a claimant's impairments, the SSA recognizes a treating physician rule of deference to the views of the physician who has engaged in the primary treatment of the claimant."[5] *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation marks, brackets, and citations omitted). As the Second Circuit has explained:

> An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various factors to determine how much weight to give to the opinion. Among those factors are: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the [SSA's] attention that tend to support or contradict the opinion. The regulations also specify that the Commissioner will always give good reasons in her notice of determination or decision for the weight she gives [the] claimant's treating source's opinion.

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks, brackets, and citations omitted).

---

[5] Although "[t]he current version of the [Social Security Act]'s regulations eliminates the treating physician rule," the rule nevertheless applies to Plaintiff's claim, which was initially filed on April 16, 2015, as the current regulations only "apply to cases filed on or after March 27, 2017." *Burkard v. Comm'r of Soc. Sec.*, No. 17-CV-290 (EAW), 2018 WL 3630120, at *3 n.2 (W.D.N.Y. July 31, 2018); *see also* 20 C.F.R. § 404.1520(c).

5

"Before the ALJ can disregard a treating physician's medical opinion, the ALJ must first ask the treating physician to clarify the deficiencies the ALJ perceives in that opinion." *Austin v. Comm'r of Soc. Sec.*, No. 18-CV-331 (PKC), 2019 WL 4751808, at *6 (E.D.N.Y. Sept. 30, 2019) (citation omitted). "[T]he ALJ must seek additional evidence or clarification when the report from claimant's medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010) (internal quotation marks and citations omitted); *see also Wilson v. Colvin*, 107 F. Supp. 3d 387, 407 (S.D.N.Y. 2015) ("Legal errors regarding the duty to develop the record warrant remand." (collecting cases)).

Furthermore, while an ALJ is entitled to disregard the opinion of a claimant's treating physician after giving the physician the opportunity to correct the deficiencies in her medical reports, the ALJ must make clear that this decision is based on conclusions made by other medical professionals. *See Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) ("The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion."); *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010) ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error.").

A.  **Plaintiff's Treating Physicians**

The Court finds that remand is required in order to enable the ALJ to properly assess the medical opinions provided by Plaintiff's treating physicians: Yvette Abraham, M.D., and Daniel Wilen, M.D., an orthopedic surgeon. (Tr. at 317–82 (Dr. Abraham); *id.* at 383–439 (Dr. Wilen).)

6

Drs. Abraham and Wilen provided functional assessments, in which they separately opined that, in an eight-hour work day, Plaintiff could sit for less than four to six hours, stand/walk for less than two hours, and lift/carry less than ten pounds. (*Id.* at 328–29, 383–84.) They also concluded that Plaintiff would require frequent breaks, that Plaintiff would be unable to perform an eight-hour workday due to pain, and that his ability to function would be affected by medication. (*Id.*)

The ALJ, while acknowledging that Drs. Abraham and Wilen were Plaintiff's treating physicians, accorded "partial weight" to their opinions because they "did not provide any basis or reasoning to support their respective opinions." (*Id.* at 20.) However, since the ALJ deemed the treating physicians' opinions lacking in support, the ALJ should have sought clarification from them regarding the deficiencies she perceived in their opinions. *See Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 428 (S.D.N.Y. 2010) ("[I]f a physician's report is believed to be insufficiently explained, lacking in support, or inconsistent with the physician's other reports, the ALJ must seek clarification and additional information from the physician, as needed, to fill any clear gaps before rejecting the doctor's opinion."). The ALJ failed to do so.

The ALJ also found that the treating physicians' opinions "contradicted other treatment notes." (Tr. at 20.) This finding was improper because it was based on the ALJ's "cherry-picking" of the record evidence. *See Quinto v. Berryhill*, No. 17-CV-24 (JCH), 2017 WL 6017931, at *14 (D. Conn. Dec. 1, 2017) ("The ALJ is not permitted to cherry pick from the treatment record only evidence that is inconsistent with the treating source's opinion in order to conclude that the opinion should be accorded less weight." (citation omitted)). The ALJ cited Dr. Abraham's treatment notes from both before and after the alleged onset date and relied on the fact that Plaintiff had normal range of motion in his cervical spine, lower extremities, and upper extremities. (Tr. at 20.) However, those same treatment notes consistently detail limitation in lumbar/sacral spine and

7

sharp, if not more severe, pain in the back. (*Id.* at 317–27, 334–37, 345, 357–60, 365–71, 376–77.) In addition, Dr. Wilen, who started treating Plaintiff after the alleged onset date (*id.* at 385), consistently noted Plaintiff's pain in his neck and back and muscular spasms of the spine (*id.* at 385–429). *See Artinian v. Berryhill*, No. 16-CV-4404 (ADS), 2018 WL 401186, at *8 (E.D.N.Y. Jan. 12, 2018) ("Federal courts reviewing administrative social security decisions decry 'cherry picking' of relevance evidence, which may be defined as inappropriately crediting evidence that supports administrative conclusions while disregarding differing evidence from the same source." (citations omitted)). While the ALJ did credit these positive findings of Plaintiff's issues with his cervical spine, the ALJ found that they were only consistent with an RFC to perform sedentary work. (Tr. at 20.) To the extent that the ALJ found the treating physicians' assessments insufficiently supported by the treatment notes, the ALJ again should have sought clarification from the treating physicians regarding those deficiencies.

### B. Consultative Examiner

The ALJ accorded partial weight to the opinion of, the consultative examiner, Chitoor Govindaraj, M.D., who examined Plaintiff once. (*Id.* at 19–20, 292–95.) The ALJ found that Dr. Govindaraj's opinion that Plaintiff did "not have any restrictions with sitting, standing, walking, or any weight limitations" was consistent with Dr. Govindaraj's own findings and some of the treatment records. (*Id.* at 20.)

"While the opinion of a consultative examiner may constitute substantial evidence, [the Second Circuit] ha[s] cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination." *Byrne v. Berryhill*, 752 F. App'x 96, 98 (2d Cir. 2019) (summary order) (internal quotation marks and citations omitted). "Generally, . . . a consultative examiner's opinion should not be accorded the same weight as the opinion of a plaintiff[']s treating physician. To the contrary, 'in evaluating a claimant's disability, a consulting physician's opinions

or report should be given little weight.'" *Briska v. Berryhill*, No. 16-CV-5601 (JFB), 2018 WL 2172674, at *16 (E.D.N.Y. May 10, 2018) (additional internal quotation marks and citation omitted) (quoting *Giddings v. Astrue*, 333 F. App'x 649, 652 (2d Cir. 2009)); *accord Hernandez v. Astrue*, 814 F. Supp. 2d 168, 182–83 (E.D.N.Y. 2011). "A consulting physician's opinions or report are typically given limited weight because 'consultative exams are often brief, are generally performed without benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day.'" *Bullock v. Colvin*, No. 17-CV-5657 (LGS), 2019 WL 967341, at *3 (S.D.N.Y. Feb. 28, 2019) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990)).

Here, Dr. Govindaraj reached the opposite conclusion to those of Plaintiff's treating physicians and found no limitations after one examination. The ALJ conceded that Dr. Govindaraj's opinion was "not consistent with all of [Plaintiff's] records, which do show that the claimant does have objective findings that cause limitations." (Tr. at 20.) Yet, citing the same treatment records, the ALJ gave both Dr. Govindaraj's opinion and the treating physicians' opinions "partial weight." (*Id.*) Because Dr. Govindaraj only evaluated Plaintiff on one occasion, his evaluation "conveys only a snapshot of Plaintiff's symptoms on the day of the examination or, at most, for a brief period close to that time, in contrast to [Plaintiff's treating physicians], whose opinion[s] reflect[] Plaintiff's condition over the course of [several] years." *Giambrone v. Colvin*, No. 15-CV-5882 (PKC), 2017 WL 1194650, at *18 (E.D.N.Y. Apr. 3, 2017) (internal quotation marks and citation omitted). Furthermore, where there is "a conflict of views between a treating doctor and a onetime consultant, the conflict should be resolved in favor of the treating physician." *Cabreja v. Colvin*, No. 14-CV-4658 (VSB), 2015 WL 6503824, at *30 (S.D.N.Y. Oct. 27, 2015) (citation omitted). Thus, at a minimum, "[t]he ALJ was . . . required to give a much more detailed

9

explanation of" why she accorded Dr. Govindaraj's opinion the same weight as those of the treating physicians. *Giambrone*, 2017 WL 1194650, at *18.

In sum, the ALJ's "good reasons" for affording both the treating physicians' and the consultative examiner's opinions "partial weight" are based on conclusions not supported by substantial record evidence, warranting remand. *See Austin*, 2019 WL 4751808, at *6–7 (remanding because the ALJ failed to seek clarification from the treating physician); *Giambrone*, 2017 WL 1194650, at *18 (remanding where "the ALJ's unsupported and conclusory explanation for her reliance on the opinions of the consultative physicians . . . cannot withstand judicial scrutiny" (internal quotation marks and citation omitted)).

## II. The ALJ's Credibility Determination

"As an initial matter, the Court notes that to the extent that the ALJ, on remand, reevaluates the evidence in addressing the treating physician rule, the ALJ should also consider whether that re-evaluation alters the assessment of the plaintiff's credibility in light of the evidence as a whole." *Larsen v. Astrue*, No. 12-CV-414 (CBA), 2013 WL 3759781, at *2 (E.D.N.Y. July 15, 2013).

"The ALJ must follow a two-step process to evaluate a claimant's assertions of pain and other symptoms." *Cabassa v. Astrue*, No. 11-CV-1449 (KAM), 2012 WL 2202951, at *13 (E.D.N.Y. June 13, 2012). "At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(b)). "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." *Id.* (alteration omitted) (citing 20 C.F.R. § 404.1529(a)).

10

> The ALJ must consider statements the claimant or others make about [his] impairment(s), [his] restrictions, [his] daily activities, [his] efforts at work, or any other relevant statements [he] makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony in its administrative proceedings.

*Villegas Andino v. Comm'r of Soc. Sec.*, No. 18-CV-1780 (PKC), 2019 WL 4575364, at *5 (E.D.N.Y. Sept. 19, 2019) (alteration omitted) (quoting *Genier*, 606 F.3d at 49).

"[T]he subjective element of pain is an important factor to be considered in determining disability." *Perez v. Barnhart*, 234 F. Supp. 2d 336, 340 (S.D.N.Y. 2002) (quoting *Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984)). "Even if subjective pain is unaccompanied by positive clinical findings or other objective medical evidence, it may still serve as the basis for establishing disability." *Correale-Englehart*, 687 F. Supp. 2d at 435. "A claimant who alleges a disability based on the subjective experience of pain need not adduce direct medical evidence confirming the extent of the pain, but instead medical signs and laboratory findings which show that the claimant has a medical impairment which could reasonably be expected to produce the pain." *Meadors v. Astrue*, 370 F. App'x 179, 185 (2d Cir. 2010) (summary order) (internal quotation marks, citation, and alteration omitted); *see also id.* ("A finding that a claimant suffers from disabling pain requires medical evidence of a condition that could reasonably produce pain. It does not require objective evidence of the pain itself or its degree." (internal quotation marks and citation omitted)).

The relevant regulations set out a seven-factor test to evaluate Plaintiff's own subjective statements regarding pain.[6] *See* 20 C.F.R. § 404.1529(c)(3). "If the ALJ rejects plaintiff's

---

[6] These are: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his pain or other symptoms; (v) treatment, other than medication, the claimant receives or has received for relief of his pain or other symptoms; (vi) any measures the claimant uses or has

11

testimony after considering the objective medical evidence and any other factors deemed relevant, [she] must explain that decision with sufficient specificity to permit a reviewing court to decide whether there are legitimate reasons for the ALJ's disbelief." *Fernandez v. Astrue*, No. 11-CV-3896 (DLI), 2013 WL 1291284, at *18 (E.D.N.Y. Mar. 28, 2013) (quoting *Correale-Englehart*, 687 F. Supp. 2d at 435).

Here, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (Tr. at 18.) The Court holds that remand is warranted, because the ALJ's determination is not supported by substantial evidence.

The ALJ reasoned that "[Plaintiff's] records [] indicate that he stays active," which the ALJ found to be inconsistent with his statements regarding the pain he was experiencing. (*Id.* at 19.) The ALJ noted that Plaintiff does light errands, takes his son to and from school, prepares food, performs some household chores, drives, and goes shopping. (*Id.*) However, the ALJ omitted other facts that qualified Plaintiff's ability to perform those daily activities, such as the fact that "[Plaintiff's] mother helps [and] takes [Plaintiff's] son to school when [Plaintiff] ha[s] trouble getting around in the morning" (*id.* at 247) and that he cooks and goes shopping "very rare[ly]" (*id.* at 37–38).

In addition, "[a]n individual can perform each of these daily activities and still experience debilitating pain at the intensity and persistence and with the limiting effects [he] claims." *Larsen*, 2013 WL 3759781, at *3. "The Second Circuit has repeatedly recognized that '[a] claimant need not be an invalid to be found disabled.'" *Colon v. Astrue*, No. 10-CV-3779 (KAM), 2011 WL

used to relieve his pain or other symptoms; and (vii) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3).

12

3511060, at *14 (E.D.N.Y. Aug. 10, 2011) (quoting *Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988)). "Indeed, it is well-settled that the performance of basic daily activities does not necessarily contradict allegations of disability, as people should not be penalized for enduring the pain of their disability in order to care for themselves." *Cabibi v. Colvin*, 50 F. Supp. 3d 213, 238 (E.D.N.Y. 2014) (internal quotation marks and citations omitted). The ALJ's discrediting of Plaintiff's statements of pain based on Plaintiff's daily activities is thus not supported by substantial evidence and warrants remand. *See Archambault v. Astrue*, No. 09-CV-6363 (RJS) (MHD), 2010 WL 5829378, at *30 (S.D.N.Y. Dec. 13, 2010) ("Plaintiff's ability to engage in certain limited daily activities[, including self-care, childcare duties, a few household chores, and some pastimes,] does not provide evidence of his ability to perform sedentary work unless he can perform those daily activities at a level consistent with the demands of sedentary work."), *report and recommendation adopted*, No. 09-CV-6363 (RJS) (MHD), 2011 WL 649665 (S.D.N.Y. Feb. 17, 2011); *see also Bradley v. Colvin*, 110 F. Supp. 3d 429, 446 (E.D.N.Y. 2015) (remanding and noting that "[w]hile [plaintiff] did engage in the daily activities of raising two children, driving an SUV locally, exercising periodically and performing some household duties with the help of her son, such conduct does not show that [plaintiff] is capable of performing full time light work" (internal record citations omitted)).

As for the ALJ's recitation of the medical evidence with respect to the ALJ's assessment of Plaintiff's credibility, the Court notes that while the ALJ acknowledged that some of the cited records predated Plaintiff's alleged onset date, she nonetheless relied on those records. (Tr. at 19; *see, e.g., id.* at 269, 282, 330–31, 333, 373.) *See McKern v. Comm'r*, No. 17-CV-944 (HBS), 2019 WL 289881, at *3 (W.D.N.Y. Jan. 23, 2019) ("Ordinarily, medical evidence that predates the claimed onset date is not relevant to evaluation of claimant's disability." (citations omitted)). The

ALJ noted that Plaintiff takes Percocet and injections and that the treating physicians recommended physical therapy. (Tr. at 19.) Yet, the ALJ dismissed the significance of these facts, stating that "[Plaintiff] only requested medication (Percocet) for his symptoms" and that Plaintiff failed to undergo physical therapy (*id.*). *See Jazina v. Berryhill*, No. 16-CV-1470 (JAM), 2017 WL 6453400, at *6 (D. Conn. Dec. 13, 2017) ("Plaintiff's treatment regimen—which included powerful prescription opioids . . . [and] other prescription drugs, and in the past included physical therapy and injections—does not appear to qualify as conservative[.]" (internal citations omitted)); *Reynoso v. Colvin*, No. 13-CV-5587 (HBP), 2015 WL 1378902, at *19 (S.D.N.Y. Mar. 26, 2015) ("[P]rescription of Percocet for plaintiff lends credibility to plaintiff's contentions that he was in significant pain."); *Fiedler v. Colvin*, 54 F. Supp. 3d 205, 218 (E.D.N.Y. 2014) ("[T]he Court finds that the ALJ did not adequately consider the extent to which the Plaintiff relied on potent pain medications [(Percocet)], which did not entirely alleviate her pain.").

The ALJ cannot "reject the claimant's statements about the intensity and persistence of [his] pain or other symptoms or about the effect [his] symptoms have on [his] ability to work solely because the available objective evidence does not substantiate the claimant's statements." *Hudson v. Berryhill*, No. 17-CV-463 (MAT), 2018 WL 4550310, at *6 (W.D.N.Y. Sept. 21, 2018) (internal quotation marks, citation, and brackets omitted). Therefore, remand is warranted for proper consideration of Plaintiff's statements regarding the intensity, persistence, and limiting effects of his pain. *See Pavia v. Comm'r of Soc. Sec.*, No. 10-CV-818 (GTS) (DEP), 2013 WL 5652497, at *6 (N.D.N.Y. Oct. 15, 2013) ("Both case law and the social security regulations prohibit an ALJ from discrediting a plaintiff's statements solely based upon objective medical evidence." (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979) and 20 C.F.R. § 404.1529(c)(2))).

## CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The Commissioner's decision is remanded for further consideration and new findings consistent with this Memorandum & Order. The Clerk of Court is respectfully requested to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: February 13, 2020
Brooklyn, New York